```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF ALABAMA
                 NORTHERN DIVISION

UNITED STATES OF AMERICA      )
                              )
        PLAINTIFF,             )
                              )
    v.                        ) CIVIL ACTION NO. 2:07-cv-687-MEF
                              )
APPROXIMATELY TWELVE THOUSAND )
($12,000) DOLLARS IN UNITED   )
STATES CURRENCY,              )
                              )
        DEFENDANT.             )
```

UNITED STATES' REPLY TO CLAIMANT'S RESPONSE TO
UNITED STATES' MOTION FOR SUMMARY JUDGMENT

Comes now the United States of America ("United States"), by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and Tommie Brown Hardwick, Assistant United States Attorney, and in reply to Claimant's response to Plaintiff's motion for summary judgment, submits the following:

Pertinent Facts

The government adopts the facts previously submitted in its response to Claimant's motion for summary judgment (Doc. 28), the United States' motion for summary judgment (Doc. 31), and the United States' brief and memorandum of law in support of the United States' motion for summary judgment (Doc. 32), as fully set forth herein.

In addition, the government briefly brings to the Court's attention an inadvertent phraseology in Sgt. Andy L. Martin's application and affidavit for search warrant and Martin's affidavit in support of the United States' motion in opposition to Claimant's motion for summary judgment. Sgt. Martin referred

to the caller as a confidential informant in his application and affidavit for search warrant. (*Defendant/Claimant's Motion For Summary Judgment,* Docs. 13 and 18 (Exhibit E). Special Agent Robert Greenwood was posed the following question in the form or an interrogatory,

Q.   "Please identify each and every confidential informant and/or witness believed by you to have knowledge of any facts related in any manner whatsoever to each allegation of your Complaint. This is to include the factual knowledge that you believe each such person possesses and if any details and/or leniency was given and/or promised to said person(s)."

Special Agent Greenwood responded, "None." (*Defendant/Claimant's Motion For Summary Judgment,* Doc. 13 and 19 (Exhibit F, p. 7). SA Greenwood also stated that the information was received "via an anonymous telephone call..." *Id.* at p. 4. Sgt. Martin corrected himself in the affidavit he prepared in support of the government's response to Claimant 's motion for summary judgment. (*United States' Response To Claimant's Motion For Summary Judgment*, Doc. 28, Exhibit A), when he stated that Sgt. Jackson received the information from an anonymous caller. The information received has been consistent in each document, that is, "a drug transaction was taking place in the rear parking lot of the Holiday Inn Express...that the suspects were driving a white Dodge Magnum and a white Chevrolet Suburban." Accordingly, whether the information came from a confidential informant or an anonymous caller, the information provided has been consistent throughout this case.

Discussion

**A.    The Facts Support A Finding That Davis Was Involved In A Drug Transaction and The Defendant Currency Is Subject To Forfeiture.**

Davis argues that the officers did not find any drugs in his vehicle, therefore, there was no connection between the defendant currency and illegal activity. However, it is undisputed that drug residue was found in the Dodge Magnum, in both hotel rooms, in the storage bin Davis rented, and in the truck Davis rented. Pursuant to 21 U.S.C. § 881(a)(6), property that is subject to forfeiture "includes all moneys given or intended to be given in exchange for illegal drugs, the proceeds of such an exchange, and all moneys used or intended to be used to facilitate a violation of a drug law."  The proceeds from the drug transaction can be forfeited.

Law enforcement received information that a drug transaction was taking place.  When detectives arrived on the scene, consistent with the anonymous tip, they observed two black males in a Dodge Magnum.  The detectives could smell a strong odor of raw marijuana as they approached the Dodge Magnum.  Derrick Wesley Davis was the driver of the Dodge Magnum.  A search of the vehicle revealed a handgun and residue of marijuana, and a search of Davis revealed a large sum of cash in Davis' pocket.  Davis maintains that since the detectives did not find marijuana in his possession, there is no proof that he was involved in narcotics. To the contrary, a drug transaction will usually result in a large amount of cash.  It is not uncommon for drug traffickers to

3

divide up the responsibilities of the participants to avoid detection. The facts of this case are consistent with drug transactions. There were two separate hotel rooms rented in the names of Alton Rivers (Room 247) and Kionne Edward Johnson (Room 249), both known drug dealers and friends of Derrick Davis. Three stacks of U.S. currency totaling $14,000, digital scales, two large plastic gallon-size bags containing marijuana residue, and two boxes of plastic sandwich bags were seized from Room 249. In the hotel room rented by Rivers, Detectives found digital scales and miscellaneous paperwork evidence that Derrick Davis rented a storage bin at another location. Finally, there was a rented truck in the Holiday Inn parking lot that had been rented by Derrick Davis. Inside the truck was clothing from a cleaners bearing the name Alton Rivers and a small bag of marijuana. The certified drug dogs alerted on both rooms, the storage bin, the Dodge Magnum, and the rented truck. Five drug alerts are more than coincidental.

  Davis contends that if you take the above facts as true regarding Room 247 and the search of the storage bin, it indicates that he was not involved in narcotics. (Doc. 37 at p. 4). To the contrary, the above facts collectively indicate that the anonymous tip was correct and a drug transaction was taking place in the rear parking lot of the Holiday Inn. "It is well established both in the law of forfeiture and in other areas of the law, that the probable cause inquiry is a flexible one in which the court must consider the 'totality of the

circumstances.'" *United States v. One Parcel Property Located at 427 & 429 Hall Street, Montgomery, Montgomery County, Alabama*, 842 F.Supp. 1421, 1426 (Md.Ala., 1994) (quoting , *$121,100 in U.S. Currency*, 999 F.2d 1503, 1505 (11th Cir. 1993)). Therefore, there is ample evidence to conclude that Davis possessed the proceeds from a drug transaction.

**B.    Davis Has Not Established That Defendant Currency Came From Legitimate Sources.**

The most significant statement that this Court should consider is Davis' concession that he "[has] absolutely no living expenses." (Doc. 37 at p. 7). Davis states that from October 2006 until January 18, 2007, he saved all the money he received by maintaining it in his pocket. Davis's assertion that he has absolutely no living expenses is simply untrue. According to documentation in the rental truck, Davis rented a 2006 F150 truck from Hertz on January 17, 2007. The authorized payment amount was $388.23. (Attached as Government Exhibit C). Davis paid with a Visa card. *Id.* The last four digits of the license number of the person renting the truck ends with 9248. (*Id.*) Derrick Davis rented a storage unit at the Dothan Mini Storage at a cost of $48, and a $10 deposit. (Attached as Government Exhibit D). The last four digits of the person renting the storage are 9248. *(Id.)* Finally, in the Circuit Court of Houston County, Alabama, in case number CS-01-011.00, Davis was ordered to pay $220.00 per month as current and continuing child support. (Attached as Government Exhibit F). The social

security number on the original child support documentation matches Davis' social security number. Davis is a twenty-six (26) year old male who co-owned a business, has at least one credit card and a valid driver's license. Based upon Davis' representation to the Court, someone else provides free housing, clothing, meals, gasoline for his transportation, and rented a storage bin for Davis. If Davis is to be believed, someone rented the F150 truck for him, although the documentation does not list a second driver of the truck. Most importantly, someone else pays Davis' child support, while Davis "saves" in excess of $13,000 cash in his pocket.

    Davis has attached what appears to be certified copies of three checks that he contends are wages for his work at Club Rio. It is clear that all of the checks are written to the order of Derrick Davis. However, each signature of Ashley Davis appears to be distinctly different. Ironically, the amount of money Davis had in his pocket continues to increase. Originally, Davis told Inv. Arnold that he had approximately $8500 in his pocket and some of the money came from Club Rio. (Doc. 32, Exhibit A). On August 30, 2007, Davis filed his *Answer And Verified Statement Identifying Interest In Seized Property* (Doc. 8), wherein Davis claimed interest in approximately $12,000 found on his person. On November 1, 2007, Davis was deposed and claimed that a total of $12,227.02 was seized from his pocket on January 18, 2007. Since Davis has finally produced a copy of check number 1025, he now claims hat he had a total of $13,882.52 in his pocket on

January 18, 2007.

The government specifically questions the authenticity of check number 1025. During his deposition, Davis presented check number 1025 written on October 2, with no amount written on the check. (Deposition Defendant's Exhibit 4, attached as Government Exhibit E; Doc. 32, Exhibit B, pp. 35-36). Government Exhibit E was presented as a copy of the original document. Defendant's Exhibit C, of *Defendant's Response To Plaintiff's Motion For Summary* Judgment, also purports to be a copy of check number 1025. The monetary amount was written with a fine point pen, whereas the Claimant's name was written with a medium or bold point pen. It appears that check number 1025 was completed by two different individuals.

In viewing the totality of evidence submitted by Davis coupled with his claim that he has no living expenses, Davis' claim of interest to the defendant currency is unbelievable and unreliable. It is highly unlikely that an individual who has no living expenses could have sufficient deductions on a tax return to net a $4920.05 refund. Davis has failed to submit a copy of his tax returns or tax records from his business to clear up questions surrounding his income and expenses. Moreover, based upon the constant changes in the amount of defendant currency Davis claims an interest to, Davis does not know how much money he had in his pocket.

    **C.**    **The Verified Complaint and The Affidavit Of Sgt. Andy L. Martin Are Not Inconsistent**.

Davis has made the same frivolous argument regarding the use of the words "confidential informant" and "anonymous tip or caller" on three separate occasions. It is important to note that the information provided was exactly the same and is undisputed.[1] The government submits that based upon the information contained in the investigative file, the information that a drug transaction was taking place in the rear parking of the Holiday Inn, came from an anonymous caller. If Davis believes that a fatal misrepresentation had been made in the application for the search warrant, he should have challenged the search. However, a challenge of the search would not immunize the defendant currency from forfeiture. *See United States v. $144,600, U.S. Currency*, 757 F.Supp. 1342, 1345 (M.D.Fla. 1991) ("The fact that property was seized in violation of the Fourth Amendment will not immunize it from forfeiture."). Therefore, Davis' claim of an alleged misrepresentation is without merit.

**D.  Dismissal of Criminal Prosecution Does Not Defeat A Civil Forfeiture.**

Dismissal of criminal prosecution does not bar civil forfeiture. In *United States v. Dean*, 835 F.Supp. 1383, 1394,

---

[1] Davis originally testified during his deposition that check number 1025, which did not have an amount written in, was in the amount of $1,000. The copy of the bank certified check number 1025 is in the amount of $2,655.50. Davis is requesting that the United States and the Court accept that he simply made a $1,655.50 mistake, when these amounts are sizeably different. On the other hand, Davis finds Sgt. Andy Martin's use of the words confidential informant and anonymous caller as "highly questionable," although the information regarding the drug transaction and the location was exactly the same.

(M.D.Fla., 1993), a distinction was noted between a criminal and civil forfeiture. It was stated "that a civil forfeiture may occur without regard to a criminal conviction, whereas a criminal forfeiture may only be commenced following a criminal conviction." Therefore, the dismissal of criminal charges against Davis does not affect this civil forfeiture action against defendant currency.

## Conclusion

For the reasons stated above, the defendant/claimant's response is not well founded, and the government's motion for summary judgment should be granted.

Respectfully submitted on this 10th day of March, 2008.

                                      Respectfully submitted,

                                      /s/Tommie Brown Hardwick
                                      TOMMIE BROWN HARDWICK
                                      One Court Square, Suite 201
                                      Montgomery, AL 36104
                                      Phone: (334)223-7280
                                      Fax: (334)223-7135
                                      E-mail:
                                      tommie.hardwick@usdoj.gov
                                      ASB4152 W86T

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2008, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Dustin J. Fowler.

                                      /s/ Tommie Brown Hardwick
                                      Tommie Brown Hardwick
                                      Assistant U. S. Attorney



CARS INC. DOTHAN, ALABAMA    HERTZ SYSTEM LICENSEE    334-673-3556
4123 ROSS CLARK CR
DOTHAN, AL  36303

RENTAL RECORD NO.

L 1124440-2

| CUSTOMER INFORMATION | CHECK OUT / CHECK IN | COMPUTATION OF CHARGES |
|---|---|---|

DAVIS DERRICK W            LIC #: XX09248
                           LIC STATE: AL EXP: 10/04/08

RENTAL: DOTHAN  96260- 3
        01/17/07    15.51
DUE:    DOTHAN  96260- 3
        01/24/07    16.00

PLAN OUT: SPD    MI OUT:  32403
RATE CLS: T

```
MONTHS       0(T) $     0.00 EA/    0 MI
DAYS         0(T) $    46.99 EA/  200MI
EX DAYS      0(T) $     0.00 EA/  200MI
EX HOURS     0(T) $    23.50 EA
WEEKS        1(T) $   281.94 EA/ 1400MI
MI CHG         (T) $     0.25
FUEL & SVC    (NT)$ 0.430 MI $ 6.450GL$   0.00
TR&S  9.000%
```

### AUTHORIZATION / PAYMENT INFORMATION
RENTAL: VISA    XXXXXXXXXXXX5204    07096A/01/17/07/$    388.23*
*This is amount authorized - NOT amount for final charges.

IF RETURNED AS DUE (SEE ABOVE) YOU
WILL BE CHARGED
 1 WK
AT RATES SHOWN.  IF NOT, A HIGHER
RATE/INTER-CITY FEE WILL APPLY.

### VEHICLE INFORMATION
OWN/VEH: 91013/0552950 TYPE: 2006 F150 SC LB 4X2N  LIC: MS 829WR1
FUEL OUT: 8/8             TANK CAP: 35.7  ROW/STALL: a/

### ADDITIONAL CHARGES / PROGRAMS

PREPARED BY:    TOMMY

- LDW DECLINED AT $ 16.99 PER DAY (T)   FULL VALUE
- LIS DECLINED HERTZ LIABILITY PROTECTION IS SECONDARY
- PAI,PEC DECLINED AT $  4.95 PER DAY (T)
NO 'ADDITIONAL AUTHORIZED OPERATORS' WITHOUT HERTZ PRIOR WRITTEN APPROVAL.
PURSUANT TO PARAGRAPH 8 OF THE RENTAL AGREEMENT, FUEL & SERVICE CHARGES
APPLY AT $  6.450 PER GL OR, IF YOU DO NOT BUY FUEL DURING THE RENTAL
AT $ 0.430 PER MI.  BOTH RATES PRODUCE APPROXIMATELY THE SAME RESULT.

BY YOUR INITIALS YOU ACKNOWLEDGE AND AGREE TO THE ABOVE CONDITIONS: _____

TR&S RATE -  9.000 APPLIES TO ALL CHARGES MARKED (T)
BY YOUR DECLINING THE OPTIONAL LIABILITY INSURANCE SUPPLEMENT (LIS), PAR.10(B) OF THE RENTAL TERMS WILL APPLY
TO THIS RENTAL.  BY SIGNING BELOW, YOU AGREE THAT ANY INSURANCE THAT PROVIDES COVERAGE TO YOU OR TO AN
AUTHORIZED OPERATOR SHALL BE PRIMARY.  THIS MEANS THAT, IN THE EVENT OF ANY CLAIMS ARISING FROM THE OPERATION
OF THE CAR, SUCH INSURANCE SHALL BE RESPONSIBLE FOR THE PAYMENT OF ALL PERSONAL INJURY AND/OR PROPERTY DAMAGE
CLAIMS UP TO THE LIMITS OF SUCH INSURANCE.

If You decline Loss Damage Waiver (LDW), which is optional, You may be responsible for any loss or damage to
the Car regardless of fault--see Par.4 of the Rental Agreement Terms And Conditions, which appear on the folder
(SGN1900005)   delivered to You with this Rental Record (the Rental Terms).  Coverage for all or part of Your
responsibility may be provided by Your own auto insurance or under your credit card agreement.  By signing
below, You acknowledge that You have read, understand, accept and agree to the above and the Rental Terms, and
You accept or decline the Optional Services as shown above.

NO ADD'L DRIVERS WITHOUT HERTZ
APPROVAL/WARNING! AIR BAGS CAN
KILL/CAUSE SERIOUS INJURY/THE SAFE
ST PLACE FOR A CHILD IS REAR SEAT

x_____
TR&S INCLUDES TAX REIMBURSEMENT OF 1.5% AND ADDITIONAL CHARGE OF 7.5%

GOVERNMENT
EXHIBIT

CASE
NO. _____

EXHIBIT
NO.  C

# Hertz

ESTIMATE OF CHARGES

CARS INC. DOTHAN, ALABAMA    HERTZ SYSTEM LICENSEE  96260-03
4123 ROSS CLARK CR
DOTHAN, AL   36303
334-673-3556

| | |
|---|---|
| CUSTOMER: | DAVIS DERRICK W |
| VEHICLE: | 91013/0552950 |
| DESTINATION: | 96260-03 |
| DATE OUT: | 01/17/2007  15.51 |
| DATE DUE: | 01/24/2007  16.00 |
| RATEPLAN: | SPD T |

```
WK        01@       281.94(T)$      281.94
SUBTOTAL 1                   $      281.94
DISCOUNT           0%       -$        0.00
SUBTOTAL 2                   $      281.94
```

**OPTIONAL SERVICES**
FUEL & SVC  $0.430 MI $6.450 GL
FUEL & SVC CHARGES CALCULATED AT RETURN*****

**ADDITIONAL CHARGES**
FEES FOR ANY ADDITIONAL AUTHORIZED     *****
OPERATORS NOT INCLUDED

**TAX/FEES**
TR&S TAX                   $       25.37

**TOTAL ESTIMATED CHARGE**   $      307.31
TOTAL MILES ALLOWED: 1400
$       0.250/MI AFTER 1400 MILES.

THIS IS ONLY AN ESTIMATE.  It assumes that (1) you will rent and return the identified vehicle at the times and places indicated, (2) if a mileage charge applies, you will drive no more than the number of miles indicated and (3) you will not incur any charges that either are listed above opposite ***** or cannot be calculated until return.  If any of these assumptions is incorrect, additional charges or charges at higher rates may apply.

RENTAL RECORD      L 1124440-2
PRINTED AT 17:29:17 ON 01/17/2007

| Dothan Mini Storage - South | DOTHAN MINI STORAGE | Dothan Mini Storage - West |
|---|---|---|
| 618 Hodgesville Rd. | (DMS) | 2717 Ross Clark Circle, S.W. |
| Dothan, AL 36301 | RENTAL AGREEMENT | Dothan, AL 36301 |
| (334) 793-5116 | | (334) 671-3900 |

This Rental Agreement is made and entered into by and between _DERRICK DAVIS_, hereinafter referred to as "Tenant", and Dothan Mini Storage, its agents, employees, owners and partners, hereinafter referred to as "Landlord".

Landlord hereby demises and rents to Tenant, and Tenant hereby hires and rents from Landlord, upon the terms and conditions hereinafter set forth, DMS _South_ Self Storage Space No. _526_ (the "Premises"), and tenant agrees to pay Landlord as rental $ _____ per month on the first day of each rental month, or the fifteenth of each month, depending on the anniversary of this agreement, in advance. Landlord may, at its option, pro rate the first month's rent from the first day of such rent month to the date of leasing, thereafter no proration shall be made. In addition to said monthly rent, Tenant shall pay the sum of $5.00 as Late Charge if the montly rental is not paid within five (5) days of its due date or $10.00 if not paid within fifteen (15) days of due date.

LANDLORD ACKNOWLEDGES RECEIPT OF $ _48_, WHICH PAYS RENTAL TO _1/18 - 2/15_ 20_07_, AND A DEPOSIT OF $ _10_, WHICH WILL BE REFUNDED IF LANDLORD IS NOTIFIED TEN (10) DAYS BEFORE LEAVING, PROVIDED THE TENANT IS NOT IN DEFAULT AND THE PREMISES ARE VACATED IN GOOD CONDITION AND ARE CLEAN AND EMPTY (ORDINARY WEAR EXCEPTED).

THIS RENTAL AGREEMENT SHALL BE AUTOMATICALLY EXTENDED FOR THE FORTHCOMING MONTH ON THE ANNIVERSARY DATE OF THIS AGREEMENT, UNLESS TENANT DELIVERS TO LANDLORD OR LANDLORD DELIVERS TO TENANT A WRITTEN NOTICE OF EITHER'S INTENTION TO TERMINATE THIS AGREEMENT AT LEAST TEN (10) DAYS PRIOR TO THE END OF THE RENTAL PERIOD.

TENANT ACCEPTS PREMISES IN ITS "AS IS" CONDITION. ALL PERSONAL PROPERTY PLACED OR MOVED INTO THE PREMISES SHALL BE AT THE RISK OF TENANT OR THE OWNER OF THE PERSONAL PROPERTY. LANDLORD DOES NOT CARRY INSURANCE OF ANY KIND ON THE CONTENTS OF THE PREMISES OR OF ANY PROPERTY OF THE TENANT STORED THEREIN, BUT TENANT SHALL PROVIDE SUCH INSURANCE AS HE DESIRES AT HIS OWN COST AND EXPENSE. LANDLORD IS NOT RESPONSIBLE IN ANY WAY FOR DAMAGES TO CONTENTS OR FOR THEFT.

Any insurance which may be carried by Landlord or Tenant against any loss or damage to the building or its contents and other improvements situated on the premises shall be for the sole benefit of the party or parties carrying such insurance. Each party hereby waives the right of subrogation against the other party. Landlord shall not be liable to Tenant, Tenant's agents, employees or guests, or to any other person on or using the Premises for any injury, loss or damage, or to the personal property of Tenant or such other person caused by any acts of negligence whatsoever, or due to any defect in said building or inter alia, its equipment, drains, plumbing, wiring, electrical equipment or appurtenances, or in said building or premises, or caused by or growing out of fire, rain, wind, leaks, seepage or other causes. Nor shall Landlord be liable to Tenant for any loss or damage that may be occasioned by or through the act or omission of other Tenants or of any other person or thing whatsoever. Tenant hereby agrees to indemnify Landlord and hold it harmless from any loss, expense and claim(s) arising out of such damage or injury, or from and against any loss or damage caused by any act or omission of Tenant, its employees, guests or agents, or caused by the Tenant's use of the Premises.

Tenant agrees with Landlord that he will not use the Premises for any unlawful or immoral purpose. Under no circumstances will tenant live in, occupy, inhabit or use the premises, or any part thereof, as a shelter or residence.

TENANT WILL NOT STORE EXPLOSIVES OR HIGHLY FLAMMABLE MATERIAL ON THE PREMISES.

Tenant covenants agrees to drain all gasoline or other flammable material from any vehicle or other item(s) to be stored in the premises which contain flammable material.

Tenant shall not store in the premises any items which shall be in violation of any order or requirement of the local Board of Health, or by the Sanitary, Sheriff or Police Departments or Department of Inspection Services or any other governmental agency, or do any act or cause to be done any act which creates a nuisance in or upon or connected with said premises because of Tenant's use during said term.

In addition to the Landlord's lien as provided by Alabama law, but not in lieu thereof, Landlord shall have at all times a valid contractual lien for all rentals or other sums of money becoming due hereunder from Tenant upon all items situated in the Premises, either now or in the future, and upon default by Tenant, Landlord may enter upon the demised premises as set out further herein and take possession of any and all items situated on the Premises, without liability for trespass or conversion, and sell the same without notice at public or private sale, at which Landlord or its assignees may purchase.

Upon vacating the Premises, Tenant agrees to clean the Premises thoroughly and to empty them of all contents or to pay Landlord for the cleaning and emptying necessary to restore the Premises to their condition when Tenant's possession commenced, natural wear and tear excepted, regardless of whether the security deposit has been forfeited.

This Rental Agreement shall in no event be construed as a conveyance by Landlord or of an estate in land, and Tenant shall have no right to assign this agreement or sublet the Premises.

In case of default of payment of rent by Tenant or its violation of any other obligation of this agreement, Landlord is authorized, as special agent of Tenant, in addition to all other legal rights, to seize and take possession of said property of Tenant and place Landlord's lock on the doors of said Premises, without notice, and when said delinquency continues for thirty (30) days thereafter, upon written notice to Tenant, his space shall be declared abandoned. A Notice will follow as to the time and place of sale (public or private), and Landlord may sell all or part of said property, the proceeds of which shall be applied first to the expense of sale, attorney's fees, legal costs, and delinquent rentals, and any remaining balance, if any, shall be held for Tenant or any notified second interest holder and, if unclaimed after three (3) years, shall become the property of the Landlord.

All notices called for by this agreement shall be in writing and shall be deemed to be delivered whether actually received or not, when sent by regular or certified United States mail, postage fees paid, return receipt requested, and addressed to the party or parties hereto at the respective addresses set out herein. Any change of address by either party shall not be considered valid unless notice thereof is received like other notices under this agreement.

Tenant's rights shall be subject to any bona fide mortgage which is now or may hereafter be placed upon the Premises or other property by Landlord.

Tenant shall pay for all of Landlord's costs of collection incurred by Landlord due to default by Tenant or for other defaults by Tenant under the terms of this lease, including, but not limited to, attorney's fees, trial preparation, investigations, court costs and publication costs.

The Premises will be used by Tenant for the following purposes: _FURN / MISC_ and not otherwise.

In the event Landlord, at its sole option, provides an electrical light bulb socket, such socket shall be used for lighting purposes only.

Time is of the essence in the payment of each and every rent payment and in the performance of all the conditions and agreements herein contained.

In the event of the breach or default by Tenant of any of the covenants, conditions or terms of this agreement, Landlord shall have the right to terminate this agreement upon five (5) days written notice to Tenant.

Any provision of this agreement determined to be invalid by the court of competent jurisdiction shall in no way affect any other provisions hereof. Alabama Law shall govern this agreement.

Tenant agrees that Landlord may enter into and upon the Premises at all reasonable times for the purposes of (a) inspecting the conditions thereof; (b) examining the Premises for violation of this agreement; and (c) making necessary repairs or alterations thereto.

NOTICE: TENANT ACKNOWLEDGES AND AGREES THAT ALL ARTICLES STORED IN THE PREMISES WILL BE SOLD OR OTHERWISE DISPOSED OF IF ANY MONTHLY RENTAL PAYMENT HAS NOT BEEN RECEIVED BY LANDLORD WITHIN THIRTY (30) DAYS OF ITS DUE DATE.

TENANT REPRESENTS THAT NO UNIFORM COMMERCIAL CODE FINANCING STATEMENT EXISTS ON ANY PROPERTY PLACED OR TO BE PLACED IN THE RENTED PREMISES EXCEPT AS NOTED BELOW OR ON THE REVERSE SIDE OF THIS AGREEMENT. IF ANY FINANCING STATEMENT HEREAFTER EXISTS PLACED IN THE PREMISES, TENANT SHALL NOTIFY LANDLORD IN WRITING BY PERSONAL DELIVERY OF A COPY OF SUCH FINANCING STATEMENT. TENANT MAY BE CONTACTED AT THE ADDRESSES OR TELEPHONE NUMBERS BELOW, OR ANY OTHER LOCATIONS OR TELEPHONE NECESSARY TO NOTIFY TENANT IN CASE OF ANY EMERGENCY OR TO COLLECT ANY DELINQUENCY IN TENANT'S ACCOUNT.

FINANCING STATEMENT

Tenant represents that the following are the only Financing Statements in existence on any property now or to be placed in the premises:

1. _____
Name and Address of Creditor

Personal Property Covered by Financing Statement

2. _____
Name and Address of Creditor

Personal Property Covered by Financing Statement

Margin notes: CASH, 48 Ren, 10 Dep, 58

GOVERNMENT EXHIBIT
CASE NO.
EXHIBIT NO. D

TENANT ACCEPTS PREMISES IN ITS "AS IS" CONDITION. ALL PERSONAL PROPERTY PLACED OR MOVED INTO THE PREMISES SHALL BE AT THE RISK OF TENANT OR THE OWNER OF THE PERSONAL PROPERTY. LANDLORD DOES NOT CARRY INSURANCE OF ANY KIND ON THE CONTENTS OF THE PREMISES OR OF ANY PROPERTY OF THE TENANT STORED THEREIN, BUT TENANT SHALL PROVIDE SUCH INSURANCE AS HE DESIRES AT HIS OWN COST AND EXPENSE. LANDLORD IS NOT RESPONSIBLE IN ANY WAY FOR DAMAGES TO CONTENTS OR FOR THEFT.

Any insurance which may be carried by Landlord or Tenant against any loss or damage to the building or its contents and other improvements situated on the premises shall be for the sole benefit of the party or parties carrying such insurance. Each party hereby waives the right of subrogation against the other party. Landlord shall not be liable to Tenant, Tenant's agents, employees or guests, or to any other person on or using the Premises for any injury, loss or damage, or to the personal property of Tenant or such other person caused by any acts of negligence whatsoever, or due to any defect in said building or inter alia, its equipment, drains, plumbing, wiring, electrical equipment or appurtenances, or in said building or premises, or caused by or growing out of fire, rain, wind, leaks, seepage or other causes. Nor shall Landlord be liable to Tenant for any loss or damage that may be occasioned by or through the act or omission of other Tenants or of any other person or thing whatsoever. Tenant hereby agrees to indemnify Landlord and hold it harmless from any loss, expense and claim(s) arising out of such damage or injury, or from and against any loss or damage caused by any act or omission of Tenant, its employees, guests or agents, or caused by the Tenant's use of the Premises.

Tenant agrees with Landlord that he will not use the Premises for any unlawful or immoral purpose. Under no circumstances will tenant live in, occupy, inhabit or use the premises, or any part thereof, as a shelter or residence.

TENANT WILL NOT STORE EXPLOSIVES OR HIGHLY FLAMMABLE MATERIAL ON THE PREMISES.

Tenant covenants agrees to drain all gasoline or other flammable material from any vehicle or other item(s) to be stored in the premises which contain flammable material.

Tenant shall not store in the premises any items which shall be in violation of any order or requirement of the local Board of Health, or by the Sanitary, Sheriff or Police Departments or Department of Inspection Services or any other governmental agency, or do any act or cause to be done any act which creates a nuisance in or upon or connected with said premises because of Tenant's use during said term.

In addition to the Landlord's lien as provided by Alabama law, but not in lieu thereof, Landlord shall have at all times a valid contractual lien for all rentals or other sums of money becoming due hereunder from Tenant upon all items situated in the Premises, either now or in the future, and upon default by Tenant, Landlord may enter upon the demised premises as set out further herein and take possession of any and all items situated on the Premises, without liability for trespass or conversion, and sell the same without notice at public or private sale, at which Landlord or its assignees may purchase.

Upon vacating the Premises, Tenant agrees to clean the Premises thoroughly and to empty them of all contents or to pay Landlord for the cleaning and emptying necessary to restore the Premises to their condition when Tenant's possession commenced, natural wear and tear excepted, regardless of whether the security deposit has been forfeited.

This Rental Agreement shall in no event be construed as a conveyance by Landlord or of an estate in land, and Tenant shall have no right to assign this agreement or sublet the Premises.

In case of default of payment of rent by Tenant or its violation of any other obligation of this agreement, Landlord is authorized, as special agent of Tenant, in addition to all other legal rights, to seize and take possession of said property of Tenant and place Landlord's lock on the doors of said Premises, without notice, and when said delinquency continues for thirty (30) days thereafter, upon written notice to Tenant, his space shall be declared abandoned. A Notice will follow as to the time and place of sale (public or private), and Landlord may sell all or part of said property, the proceeds of which shall be applied first to the expense of sale, attorney's fees, legal costs, and delinquent rentals, and any remaining balance, if any, shall be held for Tenant or any notified second interest holder and, if unclaimed after three (3) years, shall become the property of the Landlord.

All notices called for by this agreement shall be in writing and shall be deemed to be delivered whether actually received or not, when sent by regular or certified United States mail, postage fees paid, return receipt requested, and addressed to the party or parties hereto at the respective addresses set out herein. Any change of address by either party shall not be considered valid unless notice thereof is received like other notices under this agreement.

Tenant's rights shall be subject to any bona fide mortgage which is now or may hereafter be placed upon the Premises or other property by Landlord.

Tenant shall pay for all of Landlord's costs of collection incurred by Landlord due to default by Tenant or for other defaults by Tenant under the terms of this lease, including, but not limited to, attorney's fees, trial preparation, investigations, court costs and publication costs.

The Premises will be used by Tenant for the following purposes: _FuR N/ misc_ and not otherwise.

In the event Landlord, at its sole option, provides an electrical light bulb socket, such socket shall be used for lighting purposes only.

Time is of the essence in the payment of each and every rent payment and in the performance of all the conditions and agreements herein contained.

In the event of the breach or default by Tenant of any of the covenants, conditions or terms of this agreement, Landlord shall have the right to terminate this agreement upon five (5) days written notice to Tenant.

Any provision of this agreement determined to be invalid by the court of competent jurisdiction shall in no way affect any other provisions hereof. Alabama Law shall govern this agreement.

Tenant agrees that Landlord may enter into and upon the Premises at all reasonable times for the purposes of (a) inspecting the conditions thereof; (b) examining the Premises for violation of this agreement; and (c) making necessary repairs or alterations thereto.

NOTICE: TENANT ACKNOWLEDGES AND AGREES THAT ALL ARTICLES STORED IN THE PREMISES WILL BE SOLD OR OTHERWISE DISPOSED OF IF ANY MONTHLY RENTAL PAYMENT HAS NOT BEEN RECEIVED BY LANDLORD WITHIN THIRTY (30) DAYS OF ITS DUE DATE.

TENANT REPRESENTS THAT NO UNIFORM COMMERCIAL CODE FINANCING STATEMENT EXISTS ON ANY PROPERTY PLACED OR TO BE PLACED IN THE RENTED PREMISES EXCEPT AS NOTED BELOW OR ON THE REVERSE SIDE OF THIS AGREEMENT. IF ANY FINANCING STATEMENT HEREAFTER EXISTS ON ANY PROPERTY PLACED IN THE PREMISES, TENANT SHALL NOTIFY LANDLORD IN WRITING BY PERSONAL DELIVERY OF A COPY OF SUCH FINANCING STATEMENT.

TENANT MAY BE CONTACTED AT THE ADDRESSES OR TELEPHONE NUMBERS BELOW, OR ANY OTHER LOCATIONS OR TELEPHONE NUMBERS DEEMED NECESSARY TO NOTIFY TENANT IN CASE OF ANY EMERGENCY OR TO COLLECT ANY DELINQUENCY IN TENANT'S ACCOUNT.

**FINANCING STATEMENT**

Tenant represents that the following are the only Financing Statements in existence on any property now or to be placed in the premises:

1. _____  2. _____
   Name and Address of Creditor        Name and Address of Creditor

   _____      _____
   Personal Property Covered by Financing Statement    Personal Property Covered by Financing Statement

   _____      _____
   Place(s) Where Statement is Filed    Place(s) Where Statement is Filed

**CAUTION - IT IS IMPORTANT THAT YOU READ THIS CONTRACT BEFORE YOU SIGN IT**

TENANT: _Derrick Davis_
Signature

LANDLORD:
DOTHAN MINI STORAGE
By _B Frederick_
Date _1/18/07_

Print Name: _Derrick Wesley Davis_

Address: _2903 Ellington St_

City, State, Zip Code: _Dothan, AL. 36303_

Telephone: _793-6116_

Drivers License Number: _AL 6709208    10-3-81_

TENANT'S EMPLOYER
Name: _Club Rio_
Address: _____
City, State, Zip Code: _____
Telephone: _____

**NEAREST RELATIVE NOT LIVING WITH TENANT:**

Name: _____
Address: _____

City, State, Zip Code: _____
Telephone: _____





| State of Alabama<br>Unified Judicial System<br>CS-16 Rev. 2/95<br>Page 1 of 2 | ORDER ESTABLISHING PATERNITY<br>AND SETTING AMOUNT OF CHILD SUPPORT | CS01 011.0C |
|---|---|---|

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA, ex rel.

Plaintiff _Paulette Stoddart_                vs. Defendant _Derrick W. Davis_
Address _1000 Edgewood St Z98_              Address _2903 Ellington St_
        _Dothan, AL 36301_                          _Dothan, AL 36301_

This cause coming to be heard on the _30th_ day of _April_, _2001_, and there being present in Court the following: _both parties_ , and this cause being submitted upon the pleadings and upon the evidence presented, OR upon the agreement reached by the parties, the Court is of the opinion and finds that the Defendant is the father of said minor child(ren) and is obligated to pay child support for the minor child(ren) and has not supported said child(ren) named herein.

The Court further finds that the Defendant was properly served with a summons and petition by ☒ personal service, ☐ certified mail.

IT IS THEREFORE **ORDERED** BY THE COURT AS FOLLOWS:

1. _____, defendant, is the father of children named below:

| NAME OF CHILD | DATE OF BIRTH | BORN TO (MOTHER) |
|---|---|---|
| Kalecia Nicole Davis | [redacted] | Paulette Stoddart |
| | | |
| | | |
| | | |

2. The Defendant is ORDERED to pay the sum of $_220.00_ per _mo_ commencing on _May 1, 2001_ for the support and maintenance of the minor child(ren) named above.

3. Said child support payments shall continue until discharged as provided by law.

4. Said child support payments shall be made payable to <u>Alabama Child Support Payment Center</u> at <u>P.O. Box 244015 Montgomery, AL 36124-4015</u> to be transmitted to the State of Alabama, Department of Human Resources, Montgomery, Alabama, where applicable.

5. The Defendant, wherever employed, shall include the child(ren) named above on any medical insurance policy or medical insurance coverage at said place of employment or include the child(ren) named above on any medical insurance policy or medical insurance coverage which the Defendant may purchase, and shall provide the evidence of such coverage to the State of Alabama, Department of Human Resources OR

☐ Medical insurance is unavailable at reasonable cost. The parties are each ordered to pay one-half of all unreimbursed medical expenses.

☒ All medical and necessary dental expenses not covered by insurance shall be divided equally between the parties.

☐ Other arrangement regarding medical insurance: _____

| GOVERNMENT EXHIBIT |
|---|
| CASE NO. |
| EXHIBIT NO. F |

COURT RECORD    ATTORNEY FOR THE    DEFENDANT
                STATE OF ALABAMA

| State of Alabama<br>Unified Judicial System<br>CS-16 Rev. 2/95<br>Page 2 of 2 | **ORDER ESTABLISHING PATERNITY<br>AND SETTING AMOUNT OF CHILD SUPPORT** | CS01011.00 |
|---|---|---|

6. The Defendant is Ordered to reimburse the State of Alabama the following:

   ☐ $_____ representing retroactive child support, to be paid at the rate of $_____ per _____ commencing on _____.

   ☒ $ 300⁰⁰ representing the cost of genetic testing to be paid at the rate of $ 10.⁰⁰ per mo commencing on May 2001, or repaid as follows: _____

   ☐ $_____ representing previous medical support to be paid at the rate of $_____ per _____ commencing on _____;

   Said sums are hereby reduced to a judgment for which let execution issue.

7. A new certificate(s) of birth, consistent with the findings of this Court, shall be issued pursuant to the provisions of the Section 26-17-14 and 19, Code of Alabama 1975.

8. Said Defendant shall notify __Dept of Human Resources__ as to any change of address, employment, or lapse or change in medical insurance affecting dependent coverage.

9. Costs of these proceedings are taxed as follows: ☐ against Plaintiff, for which let execution issue; ☒ against Defendant, for which let execution issue; ☐ waived.

10. Reference is hereby made in this Order Establishing Paternity and Setting Child Support to a separate Income Withholding Order, the entry of which is required of this Court by the provisions of Section 30-3-61, Code of Alabama 1975, and which is specifically incorporated herein as a part of this Court's order and decree in this cause.

11. In cases where support payments are ordered paid directly to the Clerk/Register of this Court, there shall be paid an additional $1.00 administrative fee as provided in Section 12-19-26, Code of Alabama 1975, with each periodic payment.

12. That the award of child support made herein was determined by application of the Child Support Guidelines established by Rule 32, Alabama Rules of Judicial Administration. A copy of the guidelines is on file, filed herein and is made a part of the record in this cause.

**FILED**

MAY 0 4 2001

JUDY BYRD, CLERK
HOUSTON CO., AL

DONE this the __30th__ day of __April, 2001__

_____
JUDGE

COURT RECORD    ATTORNEY FOR THE    DEFENDANT
                STATE OF ALABAMA

| State of Alabama<br>Unified Judicial System<br>CS-22 Rev. 9/94<br>Page 1 of 2 | **WITHHOLDING ORDER<br>PAYMENT OF CHILD SUPPORT** | CS 01011.00 |
|---|---|---|

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA, ex rel.
Plaintiff _Paulette Stoddart_ vs. Defendant _Derrick W. Davis_

Defendant's Employer Name and Address     Defendant's Social Security Number
_Capt D's_                                                        _____-84_
_Ross Clark Circle_
_Dothan, Al 36303_
_(near Wiregrass Commons)_

This Order of Income Withholding for payment of Child Support is entered pursuant to the provisions of Section 30-3-61 or Section 30-3-62 or Section 25-4-152, Code of Alabama 1975, as a means of enforcement of the child support Order of the Circuit Court of Houston County.

IT IS THEREFORE ORDERED BY THIS COURT AS FOLLOWS:

1. The Defendant is ordered to pay the sum of $ _220.00_ per _MO_ as current continuing support and $ _10.00_ per _MO_ toward the total arrearage of $ _300.00_ _beginning 5-1-9_.

2. The Defendant's present employer or any future employer or the Department of Industrial Relations is hereby ordered to withhold from income/benefits due or to become due said Defendant $ _220.00_ per _MO_ for current continuing child support.

   The employer/Department of Industrial Relations is also required to withhold $ _10.00_ per _MO_ for arrearages which total $ _300.00_ TOTAL AMOUNT TO BE WITHHELD $ _230.00 M_ BUT NOT TO EXCEED _25_ % OF THE DEFENDANT'S DISPOSABLE EARNINGS/BENEFITS. Should the total amount ordered withheld exceed the percentage of the defendant's disposable earnings/benefits, the priority of Withholdings is as follows: _____

   The employer/Department of Industrial Relations shall remit the total amount deducted MONTHLY to Alabama Child Support Payment Center at P.O. Box 244015 Montgomery, Al 36124-4015 within ten (10) days of the date the Defendant is paid the paycheck from which the support is withheld. If the Defendant/employee's pay periods are at intervals which are more frequent than once each month, the employer may withhold at each pay period an amount cumulatively sufficient to equal the total monthly support obligation and remit such amount withheld at each pay period to payee named above within ten (10) days of the date the Defendant is paid the paycheck from which the amount is withheld. When the Total Arrearage has been withheld and remitted to the above-named payee DEDUCT ONLY CURRENT, CONTINUING SUPPORT until further instructed by this Court.

3. All payments made by the employer/Department of Industrial Relations shall be made payable to the above-named payee at P.O. Box 244015 Montgomery, AL 36124-4015 who shall make distribution of said payments in the following manner: _____

4. This Order shall be binding upon the Defendant's employer/any successive employers/Department of Industrial Relations fourteen (14) days after service pursuant to the Alabama Rules of Civil Procedure and shall remain effective until further order of the Court.

5. A copy of this Order shall:
   ☑ Be served immediately upon the Defendant's employer/Department of Industrial Relations by ☑ personal service ☐ certified mail.
   ☐ Remain in the Court's file until such time as an affidavit may be made by the obligee or obligor for service of such order.

COURT RECORD    ATTORNEY FOR THE    DEFENDANT
                STATE OF ALABAMA

| State of Alabama<br>Unified Judicial System<br>CS-22 Rev. 9/94<br>Page 2 of 2 | WITHHOLDING ORDER<br>PAYMENT OF CHILD SUPPORT | CS 01011.00 |
|---|---|---|

6. Costs of entering this Order for Income Withholding are:
   ☐ Not Applicable ☐ Taxed against Plaintiff ☒ Taxed against Defendant ☐ Waived

   Additional costs may be incurred and the Clerk/Register is authorized to tax same if this Order is served at a later date.

7. The Defendant, the Defendant's employer/any future employer/or the Department of Industrial Relations as required by law, must notify _Circuit Clerk_ at _PO Box 6406 Doth_ of any changes in employment, termination of income/benefits, or lapses or changes in medical coverage affecting dependent children of the employee.

8. The employer shall not use this Order as a basis for the discharge of the Defendant/employee.

9. This order shall not under any circumstances be waived by mutual agreement of the parties to the case.

10. An employer or future employer/Department of Industrial Relations who willfully fails or refuses to withhold or pay the amounts as ordered may be found to be in contempt of court. Additionally, such employer/Department of Industrial Relations may be found to be personally liable to the obligee for failure to answer or withhold and in such cases conditional and final judgment for the amounts ordered to be withheld may be entered by the Court against the employer.

11. When the support payments are ordered directly to the Clerk/Register of this Court, there shall be an additional $1.00 administrative fee as provided in Section 12-19-26, Code of Alabama 1975, with each periodic payment.

FILED
MAY 04 2001
JUDY BYRD, CLERK
HOUSTON CO., AL

The Clerk/Register is hereby directed to mail a copy of this Order to the Clerk/Register of the Circuit Court of Houston County which entered the original Order of support, and to further notify the Clerk/Register when this Withholding Order is served upon an employer/Department of Industrial Relations and withholdings are to commence in accordance with Section 30-3-62(g) or Section 25-4-152, Code of Alabama 1975.

DONE this the _30th_ day of _April, 2001_.

_____
JUDGE

COURT RECORD   ATTORNEY FOR THE   DEFENDANT
               STATE OF ALABAMA